UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:19-CR-00221-BLW |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| MILES PATRICK BARCLAY, | |
| Defendant. | |

The Court has before it Defendant's Motion to Transport Defendant to Local Detention Facility. Dkt. 19. The Government objects to the motion and argues that an inmate's pretrial place of confinement is within the sole discretion of the Marshals Service. *Gov't Resp.* at 1-2, Dkt. 23. The Court held a hearing on the motion on February 28, 2020 and took it under advisement. For the reasons that follow and as indicated below, the Court will conditionally grant the motion.

## BACKGROUND

A criminal complaint was filed against Defendant Miles Barclay on July 9, 2019, alleging that he distributed child pornography in violation of 18 U.S.C. §§ 2252 and 2256. On July 10, 2019, an indictment was subsequently returned and Barclay was arraigned on that indictment. Dkt. 8. Barclay waived his detention hearing and has since been held in pretrial detention pending trial. Barclay's trial

was originally set for September 9, 2019. The Order of Detention, in compliance with 18 U.S.C. § 3142(i), specifically ordered that Barclay be afforded a reasonable opportunity for private consultation with his counsel. Dkt. 12.

Following his arrest, Barclay was housed in the Ada County Jail for 42 days and then in the Jerome County Jail for 30 days. *Thompson Aff.* at 3, Dkt. 27-1. In September 2019, Barclay was transported to FDC SeaTac, where he has remained until present. *Id* at 4.

Barclay's trial has been continued three times at his request. The first continuance was granted on August 21, 2019, trial was reset for December 16, 2019. *Order*, Dkt. 16. In the first motion to continue, defense counsel argued that he needed more time to conduct an independent defense investigation and adequately prepare for trial. *Blank Aff.* at 2, Dkt. 15-1. The second continuance was granted on November 19, 2019 and trial was reset for March 30, 2020. *Order*, Dkt. 18. In the second motion for a continuance, counsel argued the continuance was made necessary, in part, because his representation of Barclay was hindered by communication difficulties arising from his client being housed at SeaTac. *Blank Aff.* at 2-3, Dkt. 17-1.

Defendant's third motion to continue was accompanied by the pending motion, which requests that Barclay be transported back to Idaho and housed here until trial. In general, counsel contends that he has not been able to adequately

advise his client and prepare for trial because Barclay is housed at SeaTac. Specifically, counsel states that (1) he is only able to meet with his client in person every four to five weeks, (2) due to the nature of his pending charges, Barclay cannot safely communicate with his attorney where other inmates might overhear, and (3) counsel was unable to schedule truly private phone calls with his client. *Blank Aff.* at 3-4, Dkt. 20. The Court granted Barclay's third continuance on February 20, 2020, and trial is now scheduled for June 15, 2020.

Beginning in 2018, the Marshals Service began housing pretrial detainees at SeaTac due to a shortage of bed-space at county jails in the District. *Thompson Aff.* at 2-3, Dkt. 27-1. SeaTac is over 500 road miles, or an hour and a half flight, away from Boise – where Barclay will be tried and his counsel is located. SeaTac allows attorney visits every day of the week, so long as they are scheduled ahead of time. *Giere Dec.* at 1-2, Dkt. 30 (citing 28 C.F.R. § 543.13).

SeaTac provides an "inmate legal telephone terminal" inside each housing unit for an inmate to call their attorney. *Id.* at 2. This phone terminal is located in the common area of each housing unit and conversations can be overheard by other inmates. *Blank Aff.* at 2, Dkt. 29. The Government has indicated that "[p]rivate, unmonitored attorney telephone calls may also be arranged." *Giere Dec.* at 2, Dkt. 30. According to the Government, if an inmate or defense counsel desires a truly private attorney-client call, the inmate should contact their unit team to request an

unmonitored attorney call pursuant to BOP Program Statement 5264.08. *Id.* At the hearing on this motion, the Government indicated that a defense attorney may also request a truly private call with their client by sending a letter to the Warden. In either event, to have a truly private call, the inmate must "demonstrate[] that communication with the attorneys by correspondence, visiting, or normal telephone use is not adequate."[1] *Id.* (citing 28 C.F.R. § 540.103; BOPPS 5264.08).

Due to the sensitive nature of his charges, Barclay cannot openly discuss his case with his counsel using the legal telephone terminal located inside his housing unit. *Blank Aff.* at 3, Dkt. 29. Barclay's counsel attempted to schedule private calls with his client by emailing the Warden's executive assistant, emailing Barclay's case manager, and attempting to have Barclay schedule the call through his counselor. *Id.* There is no indication in any of the pleadings that Barclay's counsel was ever informed of BOP Program Statement 5264.08, or the need to demonstrate that alternative means of communication were not adequate before scheduling a truly private call.

Counsel was able to schedule an ostensibly private call with Barclay in October 2019; however, at the outset of the call Barclay was informed that the call

---

[1] The Government indicated at the hearing that Defense Counsel may also schedule a call with his client once there has been a demonstration that other avenues of communication are not adequate. However, the Court can find no provision in the BOP Program Statement for attorneys to schedule calls with their client. *See* BOPPS 5264.08.

**ORDER - 4**

would be monitored, and thus he did not feel free to discuss confidential matters. *Id.* In late December 2019, Barclay's Counsel attempted to schedule another private call. After waiting a week for a response, Counsel was given only twenty minutes warning that his client would be available for a private call. *Id.* The call had to be short due to Barclay's counselor's schedule, and the counselor sat in on the call, so it was not truly private. *Id.* Counsel's most recent request to schedule a private call has yet to receive a response. *Id.* The Declaration of C. Giere, a Case Manager for SeaTac, contends that both of these previous calls were private and unmonitored despite defense counsel's claim to the contrary. *Giere Dec.* at 3, Dkt. 30.

SeaTac follows federal policy concerning legal mail and does not monitor attorney correspondence except to inspect for contraband and the qualification of any enclosures. *Giere Dec.* at 2-3, Dkt. 30. Inmates/detainees are allowed to keep a banker's box of legal materials inside their cells and may view e-discovery on the e-discovery computer located within each housing unit. *Id.* However, for safety reasons, Barclay's Counsel will not send discovery materials his client. This is to prevent other detainees/inmates from learning the details of the charges against Barclay. *Blank Aff.* at 5-6, Dkt. 29. For the same reason, Barclay cannot safely store materials related to his case in his cell nor view materials on the e-discovery computer. *Id.*

ORDER - 5

In sum, Counsel represents that he is not able to effectively communicate with his client, and is not able to adequately prepare for trial due to his client's housing and SeaTac's unwillingness to provide anything resembling a private line of communication. *Id.* Accordingly, Barclay's Counsel has requested that Barclay be returned to the District of Idaho to prepare for trial.

At the outset of the hearing, the Court invited counsel to try to work collaboratively to develop a protocol which would ensure that the many Idaho detainees being held at SeaTac have the ability to effectively and privately communicate with their attorneys. Counsel for Mr. Barclay expressed a willingness to do so. Counsel for the government declined the offer, indicating that defense Counsel should work within the existing framework to obtain access to his client.

## STANDARD

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). The Government may detain someone indicted on a federal offense to ensure his presence at trial and may subject him to the restrictions and conditions of detention so long as those conditions do not amount to punishment, or otherwise

violate the Constitution. *Id.* Simply put, a pretrial detainee is legally in a far different position than an inmate who has been convicted of a federal offense.

There are several important constitutional rights that a pretrial detainee enjoys, which are either reduced or eliminated for a convicted inmate. The first is the right to the assistance of counsel at all "'critical' stages in the criminal justice process." *Maine v. Moulton*, 474 U.S. 159, 170 (1985) ("[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself."). The second is the right of "meaningful access to the courts." *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). This includes the opportunity to communicate privately with a pretrial detainee's counsel. *Id.* This right may be violated where a pretrial detainee's communication with his counsel is chilled. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1212 (9th Cir. 2017). Finally, is the fundamental right to a speedy trial. *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967) ("We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment.").

To protect these rights, Congress has enacted the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the Bail Reform Act, 18 U.S.C. 3142. *See United States v. Salerno*, 481 U.S. 739, 747 (1987). The Speedy Trial Act recognizes the strong public interest in speedy justice and protects the defendant's right to be brought to justice promptly. *United States v. Pollock*, 726 F.2d 1456, 1459-60 (9th Cir. 1984).

The Act prescribes strict time limits within which each stage of the prosecution must be completed.[2] *Id* at 1460. These time periods may only be extended by a finding "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. 3161(h)(7). The sanction for failure to comply with the mandates of the Speedy Trial Act may be dismissal of the indictment. 18 U.S.C. § 3162.

The Bail Reform Act mandates that every person charged with a federal offense be given a detention hearing. 18 U.S.C. 3142(a). If the judge finds that the defendant poses a danger to public safety or a flight risk, the defendant may be ordered detained. § 3142(f). The detention order must "direct that the [defendant] be afforded reasonable opportunity for private consultation with counsel." §3142(i)(3). Section 3142 is designed to protect a defendant's Sixth Amendment right to counsel. It vests the Court with jurisdiction to enforce the detention order and if necessary, to

> permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

---

[2] A defendant must be indicted within thirty days of being arrested and trial must commence within seventy days from the filing date of the indictment or the date the defendant appeared before a judicial officer on the charge. § 3161(b) & (c).

§ 3142(i); *see Falcon v. U.S. Bureau of Prisons,* 52 F.3d 137, 139 (7th Cir. 1995); *United States v. Janis*, 820 F. Supp. 512, 514 (S.D. Cal. 1992).

## ANALYSIS

The problem of housing pretrial detainees outside of the judicial district where they face charges is not new. It presents an inherent tension between a pretrial detainee's constitutional rights and the need for effective administration of detainment centers. *See Bell*, 441 U.S. at 520 ("the Government must be able to take steps to maintain security and order at the institution"). Ordinarily the Court accords deference to the internal administrative decisions of prison officials. "But where, as here, a prisoner alleges that a particular restriction imposed upon him by the prison officials impinges upon his exercise of constitutionally guaranteed rights, it is incumbent upon [the Court] to carefully scrutinize the effect of the restrictions." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1051 (8th Cir. 1989) (quoting *Cruz v. Hauck*, 475 F.2d 475, 476 (5th Cir.1973)).

Indeed, when the interest in effectively administering a federal detention center conflicts with a detainee's constitutional rights, it is clear which must give way. Where a pretrial detainee's right to a speedy trial or access to counsel is infringed by their conditions of imprisonment, the Court has the power and duty to protect the detainee's rights. *See Janis*, 820 F. Supp at 514; *United States v. Yandell*, 2019 WL 5587291 (E.D. Cal. Oct. 30, 2019).

ORDER - 9

Here, Barclay is housed more than 500 miles from his counsel, who is a federal public defender with many other clients. Due to his obligations to his other indigent clients, counsel is only able to make the trip to SeaTac to meet with his client in person every four to five weeks. In the meantime, Barclay cannot openly discuss his case at the telephone terminal in his housing unit. If he were to discuss his charges at the telephone terminal with other inmates within earshot, he risks waiving his attorney-client privilege and may well put his own safety at risk. Further, due the nature of his charges, Barclay cannot store discovery materials in his cell nor review them on the e-discovery computer in the housing unit. These restrictions may not be as challenging if Barclay were a Washington detainee, and his counsel could visit anytime a development occurred in the case. Here, the restrictions are clearly chilling Barclay's communication with his counsel and preventing his preparation for trial.

Counsel has repeatedly attempted to schedule truly private phone calls with his client. These requests have not been taken seriously by SeaTac officials, if they have been responded to at all.

At the hearing, counsel for the Government represented that if the Defendant or counsel would simply follow the regulations and BOP Program Statement 5264.08, SeaTac administration would be happy to schedule a private call. However, this does not square with the situation described by defense Counsel.

**ORDER - 10**

Barclay's Counsel repeatedly sent requests to the Warden's executive assistant and Barclay's case manager discussing the need for a private call and was never told about Program Statement 5264.08.

Moreover, the regulations and Program Statement are wholly inadequate to protect an Idaho detainee's right to counsel. The Program Statement provides that "frequent confidential inmate-attorney calls should be allowed only when an inmate demonstrates that communication with his or her attorney by other means is not adequate." BOPPS 5264.08. First, it is unclear what "not adequate" means or who is to make the determination. Second, the Program Statement applies to every person housed at SeaTac, whether a pretrial detainee or a convicted prisoner – despite the clear differences in their right to counsel. They also apply to all pretrial detainees in the same way, despite the obvious differences between Washington detainees, whose attorneys' close physical proximity permits daily, in-person visits, and Idaho detainees whose counsel must drive 500 miles or take a commercial flight to visit their client. Third, this presumes that a detainee who is transported to SeaTac must wait for the available communication to break down sufficiently before being able to make a showing that truly private attorney-client calls are necessary. Finally, the regulation suggests that it is the inmate, and not the attorney, who must make the showing and schedule private calls. While the Government argues that defense counsel would be able to make the showing and

schedule private calls, that is not indicated in the regulations or program statement which SeaTac is apparently so dedicated to following.

In short, while the regulations and Program Statement slavishly followed by SeaTac may be adequate for convicted prisoners or for detainees with their counsel located just down the road, they are simply not adequate for detainees housed more than 500 miles from their attorneys.

The problems associated with the regulations, Program Statement, and Government's unyielding rigidity is made clear in this case. Barclay has been in prison for more than 200 days awaiting trial. While his first continuance was granted due to a need by Counsel to investigate his charges and adequately prepare, the subsequent continuances have been made necessary, at least in part, because Counsel has been denied the ability to privately communicate with his client on a regular basis. If Barclay's trial remains, as currently scheduled, on June 15, 2020, he will have been in pretrial detention for 332 days, with 183 days of that due, at least in part, to his current conditions of pretrial confinement.

Barclay and his Counsel are presented with an unacceptable choice—either forgo adequate preparation of his defense or request a continuance to make more trips to SeaTac. This is a true Hobson's choice – forcing Barclay to choose between which of his constitutional rights he values the most. The challenges Barclay and his Counsel have faced in communicating about his case are certainly

not "reasonable." To be clear, the Court is not finding a constitutional violation of Barclay's Sixth Amendment rights. However, in light of the multiple continuances, and severely curtailed ability to openly communicate with his Counsel, the Court finds that the FDC SeaTac is not affording Barclay a "reasonable opportunity for private consultation with counsel" in violation of the Magistrate Judge's detention order in this case.

Accordingly, the Court will order that the United States Marshall return Mr. Barclay to Idaho, where he will be housed until the trial in this matter, unless FDC SeaTac immediately adopts the following protocol,[3] which the Court deems necessary to protect the Defendant's right to counsel and to a speedy trial:

1) Mr. Barclay and his attorney shall be permitted to have communications (phone or video conference calls) that are truly private and confidential, and are not overheard by SeaTac staff or by other inmates/detainees. These communications shall be permitted for such duration and with such frequency as Counsel deems necessary to effectively represent his client.

---

[3] As noted above, the Court invited counsel for the government and Mr. Barclay to meet and develop a protocol which would properly balance the Defendant's constitutional rights with the administrative needs of FDC SeaTac. The government declined to do so. This, in turn, has left the Court with no input from FDC SeaTac as to how this balance might be achieved. Accordingly, the Court has defaulted to protecting Mr. Barclay's rights, regardless of the possible impact on the orderly administration of the detention center. The Court would still encourage counsel to meet and confer to develop appropriate protocols – not only for Mr. Barclay, but for the many other Idaho inmates housed at SeaTac.

**ORDER - 13**

2) FDC SeaTac shall:

    a. Establish a policy through which either Mr. Barclay or his attorney can schedule confidential calls.

    b. Shall designate a point of contact for scheduling such calls.

    c. Schedule routine attorney-client calls within 72 hours of receiving such a request.

    d. Schedule emergency calls within 24 hours of receiving such a request. These calls should be confidential to the extent practicable, but strict confidentiality is not required.

    e. Make accommodations for confidential viewing and storage of discovery materials.

## ORDER

IT IS THEREFORE AND HEREBY ORDERED that the U.S. Marshall shall transfer the Defendant back to the District of Idaho, where he will be housed until his trial, unless FDC SeaTac complies with the requirements stated in this decision.

IT IS FURTHER ORDERED that when the Defendant is transported back to the District of Idaho he shall be allowed to bring legal documents with him or

those documents shall be shipped to his new detention location at no cost to the Defendant.

DATED: March 2, 2020

B. Lynn Winmill
U.S. District Court Judge